Good morning, Your Honors, Katherine Bux-Warwick on behalf of Appellant Richard Schoenfeld, who is present in court. I would like, please, to reserve two minutes for rebuttal, should that be necessary. Your Honors, we are here before you today because the court below entered a judgment against Mr. Schoenfeld on January 31st of 2013, holding that a debt due as a result of loans made from an employee stock ownership plan were non-dischargeable pursuant to Section 523A-4. After that order was entered by the court below, the Supreme Court decided the matter of Bullock v. Bank Champion N.A. 133, Supreme Court 1754. I think we're aware of that, so I think that's a good starting point, because obviously Bullock required a finding of being culpable. And so the question is, is a remand necessary for the court to reevaluate in light of Bullock, or can we do it on this record? And I would like your response in terms of, in this case, why doesn't the record show that Schoenfeld was at least reckless with respect to the risk that the loans violated his fiduciary duty? The District Court found, one, that the loans were not for the exclusive benefit of the plan participants. Two, Schoenfeld acted imprudently by commingling Tomco and plan assets and failing to consider other alternatives for paying down Tomco's debts. And three, nothing in the plan could possibly be read to authorize the transfer of plan funds to Tomco. Four, the loans were paid for the benefit of a party in interest. And five, Schoenfeld was engaged in self-dealing when he made the loans. So based on those determinations by the District Court, isn't a remand futile? I think a remand is not necessary, Your Honor, because the facts in the case were virtually stipulated. The finding of the District Court, in addition to those elements that you have described, was that the nature and purpose of Schoenfeld's conduct did not exhibit bad faith and did not meet the standard of bulk. So I am here to argue today that... But isn't it a little bit like an attorney that takes money out of the trust account and, you know, pays office expenses and all of that, but has every intention to pay it back? And doesn't, I mean, isn't Mr. Schoenfeld, I mean, he's an accountant, right? So you can't use this money to keep the business afloat. He didn't use the money to keep the business afloat for his personal benefit any more than for all of the other employees of Tomco, a company that was going under and had been, the assets of which were to be acquired by a company that we'll call TAP. So albeit maybe good, you know, not being, you know, he wasn't like stealing the money or doing something like that, but... He wasn't stealing the money. But what's your best justification for using this type of money to do that? The best justification is that Bullock requires that there be a scienter element. The scienter element was not found. You have described, I think a bit pejoratively, if you will forgive me... Well, I have to, but I have to go with what the district court did, so that's what... That's exactly right. The district court found those facts. That did none of those facts other than the finding by the district court that he did not act in bad faith. Other than that finding, there were no findings as to his mental state. But does Bullock require bad faith? Pardon me? Does Bullock require bad faith? No, Bullock doesn't necessarily require bad faith. You're exactly right. Bullock doesn't require bad faith. But Bullock requires a mental condition, a scienter, if you will, that the government has asserted should be gross recklessness. That is the government's position. We're not talking about any other standard under Bullock except the gross recklessness that the government has asserted. All right. Why isn't it grossly reckless? It isn't grossly reckless because the first borrowing, which was repaid relatively promptly, was made with Mr. Schoenfeld and the other two trustees. I understand, but you also need to remember that he was not making these decisions alone. He may be jointly and severally liable, but he wasn't making these decisions alone. He made the decision to borrow $100,000 to meet payroll expenses, which was repaid from receivables that he knew at the time would be collected. They were collected, and it was, and the monies were repaid to the client. I know I keep interrupting you, but I just kind of want to understand this. So when you're saying a remand isn't per se necessary, you're saying that this court could just say that he wasn't culpable under Bullock? No, I'm saying that the facts that the court has recited are not the only facts that are relevant to the decision in this matter because those facts, other than the no bad faith finding by the trial court, those facts did not deal with Mr. Schoenfeld's state of mind, and state of mind is what Bullock requires. But to rephrase the question, I think what Judge Callan is asking is that you're asking this court to reverse, not to vacate and remand for reconsideration under Bullock. You're saying this court right now should hold that under Bullock, your client wins on the merits. Yes, I am saying that. I'm saying that when the established factual elements of the case, which are before the court and are established, when those elements are examined for the purpose of the scienter requirement in Bullock, Mr. Schoenfeld's actions were not grossly reckless. Well, let me ask you about that because I agree that the district court was applying faithfully the Ninth Circuit laws as existed at the time. Sometimes the Supreme Court doesn't agree with this court. I know it's crazy that I would say that, but it happens. But when you look at excerpts of record page 69, and specifically there's the October 29, 2012 order, the district court is talking about the level of men's brain. Do you have a second if you could pull that up there? I've got it. Great. He says, and I'm reading here, while there may be in fact valid policy reasons to require culpability before conduct is considered to be defalcation, that is not the law of the Ninth Circuit. Even innocent acts, the law, and he goes on to say, thus defendant's argument fails as a matter of law. He didn't say defendant's argument fails because in fact he's reckless, and I think that's good for you. But on the other hand, he didn't say, and by the way, defendant is innocent. He said as a legal matter that the argument fails, but not as a factual matter. So what I'm trying to understand, I thought you were going to come here and say we should remand to the district court. I'm surprised to hear you saying we should just reverse on the facts here. How can we do that in light of the fact that the district court applied the wrong standard? Because the district court applied the existing standard of this court, which was articulated in Lewis, and Lewis does not require or consider any scienter requirements. Lewis was overruled, and in fact in Bullock, the Supreme Court compared the First Circuit position on defalcation under Bayless with the Ninth Circuit position on defalcation under Lewis and the analogous cases to Lewis, and overruled the Ninth Circuit position, which was a per se position. It was absolutely per se. I think you can do it on the facts, because the facts that play upon Mr. Schoenfeld's lack of gross recklessness are all established in the record. The first fact is that the first loan was made with knowledge that receivables would be available to repay the plan, and it was. The second three loans, the second series of loans, were made within days before the sale transaction was to close. Throughout the remaining period of time following the sale, Three, at the time Mr. Schoenfeld authorized, the loans that were made in the first few days before the sale, on the first and the second, those he anticipated would be repaid because the buyer of Tomco's business assets was required to pay operating expenses of Tomco that were essentially payables at the time the transaction closed. That's what the contract says. That is in the record, and I have cited you to the record and given you the excerpts in the documents that I provided you. So it was wrong but not reckless? It was wrong but not reckless. I think that's fair. And per se wrong is what the Lewis standard, if you will, that was in existence at the time that the trial court made the ruling that you refer to. I think Judge Watford has a question for you. Thank you. Just to clarify your position, I know you say that we should just decide on this record in your client's favor that his conduct did not meet the new standard under Bullock. But let's say we disagree with you on that. Are you saying that you do not want us to remand because there's really no new facts that could be developed and that we should just decide the issue one way or the other on the existing record? Or are you saying if we don't by your first argument that nonetheless we should remand because there's more that you want to do in terms of developing the record about your client's mental state? Well, I hope at least that I put the full record before the trial court in the cross motion for partial summary judgment. We filed a cross motion on this, and we referred to the reasonable expectations that my client had prior to authorizing the group of three loans at the end and the subsequent efforts of my client to get those loans paid. And that record is there. Okay, but can you just... I just want to walk away from this argument with clarity because I don't agree with you on your first argument. So all I'm trying to find out is do you nonetheless want a chance on remand to develop the record further if that's where the panel ended up? Or are you saying, you know what, that's going to waste everyone's time. You guys just decided on the record right now one way or the other. Well, if you don't agree with me, obviously, I would like to have a remand. I mean, that's the easiest question you've asked me today. I think my time is up if I'm going to... All right. Well, we'll allow you two minutes on remand. Okay, thank you. Thank you so much. Good morning. Good morning. Erin Mohan for the Secretary of Labor. May it please the Court. The District Court held, and it is undisputed on this appeal, that Mr. Schoenfeld transferred funds from the pension plan to Tomco for the purpose of paying the company's operating expenses with no authorization and in violation of multiple fiduciary duties, including his duties of loyalty. Well, I think we've already got the wrong part there. So the question is on Bullock. There wasn't an explicit finding in so many words as to what Bullock would require. So can we do it here, or do we have to remand? With the findings, do the findings just say that there would be no other conclusion, or what's your position on that? This Court can decide this case without remand based on the District Court's findings, which are undisputed in this appeal, and based on basic background facts that Mr. Schoenfeld has acknowledged in his briefing. Under Bullock, the Supreme Court held that you don't have to show bad faith. Sorry. I was just moving the mic. I apologize. And that you can either prove wrongful intent through actual knowledge of a fiduciary violation or through gross recklessness to a fiduciary violation by showing that the fiduciary consciously disregarded or was willfully blind to a substantial and unjustifiable risk that the conduct would turn out to violate a fiduciary duty. Well, is it your position, because it was wrong for him to do it, that you don't have to show more? No, Your Honor. Because, obviously, I think after listening to the appellant's counsel, that we hear cases where people would steal money out of this and buy a yacht. I mean, these are not the facts in this particular case. And it looks like the first time when he rolled the dice there, he was able to pay it back. But then, ultimately, so what's the strength of the recklessness argument and what makes it undisputed? The operative wrong under the standard announced in Bullock is the violation of the fiduciary duty itself. So the question here is whether Mr. Schoenfeld was consciously disregarded or was willfully blind to the risk that his actions were going to turn out to violate his fiduciary duties. This court can find, can, the Secretary has proven those elements based on the circumstantial evidence already established in this case. Can I ask this? Am I right in thinking that it wouldn't matter if, it would matter for purposes of getting a monetary judgment against him, but let's just put that aside. For purposes of him violating his fiduciary duties, does it matter that the money, would he still have violated his fiduciary duties even if the money had been paid back the second time too? That's correct, Your Honor. Repayment is, in fact, entirely immaterial to the court's decision today. So what I, I guess I, all I heard from your opponent was that he had this expectation or hope that the money would be paid back and that seems to be the force of the argument on the other side is simply that, hey, he, you know, had good reason to think that the money actually would be paid back and that the plan wouldn't be harmed. But I'm hearing from you that that's actually irrelevant to the question as to whether he was, whether his conduct would have violated his fiduciary duties. Is that right? That's exactly right, Your Honor. Okay, so all, all we would need to find in order to, to find that the Bullock standard was satisfied is just that he was at least aware of a risk that his conduct, whether the money ultimately got paid back or not, whether the, the risk of him making a loan, whether he was aware that that would violate his fiduciary duties. And if we find that, then he's, he's liable? That's exactly right, Your Honor. That's exactly right. But it's not any risk, right? I mean, you would have to look at each of the, because obviously the first one got paid back. So then would that give him reason to think that they would be able to, I think as counsel for the appellant said something, there was money that was going to be coming in and it looked, the risk didn't look that great that it wouldn't be. So. Well, Your Honor, even if he had paid back every single transfer that he made from the plan to Tomco, he still would have violated his fiduciary duties. But let's say the court was looking at it and said, yeah, you violated your fiduciary duty, but under, but he had paid back every single one and it was a pretty low risk situation. Would the court be compelled to find that he was culpable under Bullock? My understanding, Your Honor, is that in this circuit you wouldn't have defalcation in the first instance because it requires missing funds. It requires a misaccounting. So in this circuit you wouldn't have had defalcation, but on a different question. But the Bullock question has to do with whether a fiduciary is consciously disregarding a risk that the actions he's taking are going to turn out to violate a fiduciary duty and whether that disregard is a gross deviation from what a fiduciary who was trying to comply with the law would do. So the duties are very clear. There's no sort of repayment escape hatch in any of the fiduciary duties under ERISA. It's very clear that you cannot use plan funds for any purpose other than the exclusive purpose of providing them benefits under the plan, pension benefits in this case. Was there anything in the record to talk about why he did this? I'll give you a couple of examples. One scenario is he's the Mr. Magoo accountants. That was a cartoon character who was blind. So he wasn't willfully blind. He was like Mr. Magoo. He was just blind. That's one. Or second, that he actually called up a lawyer and the lawyer gave him terrible advice, but the lawyer actually told him, look, don't worry, don't sweat it, you can just pull the money out, you pay it back, no one's going to care. Advice of counsel. I'm not saying that's what happened in this case. In fact, I suspect it's not what happened in this case. But was there anything focused in the discovery process or in the motion for summary judgment that talked about the why question? Because the standard in the Ninth Circuit didn't care at the time about the why. It was just did you do it, not why you did it. Was there any development of that at all? Well, Mr. Schoenfeld has acknowledged and has argued that he transferred the funds in order to keep the company afloat. That was the purpose. What I mean by the why, maybe I didn't use the right term, his mental state, that the reason why he thought it was okay to transfer these funds was because he was the world's worst accountant, he talked to a lawyer and they said it was okay. Anything that was introduced to explain the motivation behind this? Yes, he was doing it to pay back. That's his explanation. But was there any development of that at all? There's nothing in the record that suggests at all that Mr. Schoenfeld thought that these transfers were innocent. But was there anything to suggest that he thought they were guilty, that these were dirty transfers? I think that that inference comes from the circumstantial evidence as a whole, Your Honor. You're frustrating me a little because the first question you didn't answer. You said there's nothing in the record to support that. So what is in the record that we can look at that would surely say that it would meet the Bullock standard? Your Honor, there's multiple things. In the record, we know that he made the transfers, that he made them knowingly, that he made them to pay the company's operating expenses, that he did so without any authorization from the plan documents. The district court found this, and Mr. Schoenfeld has not challenged this on appeal. What facts are there, either testimony or whatever, as to his state of mind? What are the facts? There's no testimony as to what Mr. Schoenfeld was thinking at the time or how he might have felt at the time. But you just said, and I think it is in the record, his reason. He gave his reason for doing it. So that is something on whether you believe it or not, but that's something. And what capacity was that in the record? So the record shows that Mr. Schoenfeld transferred the funds for the purpose of keeping the company afloat. He's also made the argument that in doing so... But is that a deposition statement? Is it his testimony at the trial? Where is that statement? There is no testimony at trial. He discusses that in an interrogatory, and the district court also found that that was the purpose. The district court's finding is at ER 11. So what does the interrogatory say? And the interrogatory says... I apologize. Your Honor, I don't have that site right here, but... Momentarily. All right, we can find it. I apologize. That's his direct statement of why he did it. What's the question? Why did you transfer the funds? And he says, I transferred them because. Is that... Exactly, Your Honor. And the issue here is that Mr. Schoenfeld has argued this as somehow relieving him of liability. He's argued that because he was transferring the funds to keep the company afloat, this has been a part of his argument, that because he transferred the funds to keep the company afloat, he wasn't actually doing anything wrong. Explain to me the practical effects of whether this, whether we affirm, or in the real world, what does this finding mean? How does it make a difference in how the case comes out when there's defalcation? How does that make a difference in the actual resolution of the case? Of this particular case? Right. So if you affirm that the district court's finding that there was defalcation in fiduciary capacity, you're affirming the non-dischargeability judgment. So at the end of Mr. Schoenfeld paying on his bankruptcy, his debt to the plan participants would not be discharged, and he would be liable for it. Okay, and if we didn't, or if we said that if adopted counsel's position that there was no showing of him being culpable or knowingly reckless or the center part of it, then he can discharge it? No, Your Honor. That's what I'm asking you. I apologize that I misunderstood your question. We're going through this whole exercise. We're going to decide the case or whatever, but at the end of the day, how does it all matter? I apologize, Your Honor. I understand. I don't think I'm being very clear today or something, or no one wants to answer my questions. It was my fault entirely. So you cannot reverse the district court's judgment on a legal ground that they did not have the ability to apply. So if you disagree with the Secretary's position, you would vacate and remand. This was a motion for summary judgment, so either the district court could reopen discovery, in which case the Secretary, even though we have sufficient evidence on the record now, we would do more discovery to bolster that evidence. Mr. Schoenfeld's counsel has, I guess, suggested that they wouldn't. I didn't quite understand that. Or the district court could bring it to trial either way. But I guess if he wins on this issue, how does that make a difference in the end of what he has to pay? So he's already been found liable. So he already... So it doesn't make a difference on that? Well, it makes a difference because... That's what I want to know. Because right now he's in a bankruptcy proceeding. So if the debt is discharged, if the debt is not found non-dischargeable, then when he finishes his bankruptcy proceeding, the debt will be discharged and he will not have to pay the money. Okay, so that's the difference that it makes. Right, that's correct, John. He either has to pay it or he doesn't have to pay it. Yes. Okay. Now, counsel, when I used to prosecute cases, we would have cases against fiduciaries, and the fiduciary would say, maybe I made a bad call, but I wasn't... Maybe I was negligent, but I wasn't reckless, and we would have to prove he was reckless, and we would look at, for example, training. Was there any training? Was there any evidence admitted in terms of summary judgment to show that there was specific training that he received on the kinds of topics saying, don't do this, don't take trust funds out? Anything like that? No, Your Honor, and the Secretary didn't build this record to meet this particular standard, but the record, in fact, meets it, and in part it's because of these basic background facts about Mr. Schoenfeld. He was a licensed CPA. He had been the treasurer and controller of TomCo or the COO of TomCo for many years. He was an experienced trustee. So when you have someone who has this kind of background and you're faced with conduct that is so obviously... So I guess, I don't mean to be picky with you, but there are things in the record about his training because he was a CPA. Because he did this, he did that. There's nothing that specifically refers to training, but you're correct, Your Honor, you can make a lot of inferences from his licensing. But I take it that your position would be that any lawyer in the state of California who has trust funds who does something similar to what this individual did would be reckless. If the conduct is the same conduct as in this case, yes. Now the state bar, and hopefully this doesn't apply to anyone here in the courtroom, the state bar goes after attorneys for doing these kinds of things. And when I read the little California bar magazine that has a list of all the people, it doesn't say reckless. It often says negligence or used poor judgment. So it seems that lawyers can make mistakes, trustees can make mistakes. I'm not defending what he did here, but without an inquiry to determine what the mens rea is, I'm having a difficult time coming to where you are. Look, I agree, the facts here stink as to what happened here. But the district court wasn't applying that test, so I've heard there's the background facts, but was there anything in the record the district court said, never use the word reckless, correct? Never use the word willful? No. Okay, that's all I have. All right. Unless there's further questions, you have 12 seconds. Just say affirm. The secretary respectfully requests that you affirm. Thank you. Thank you. Thank you, counsel. All right, you have two minutes on rebuttal. Thank you very much, Katherine Butz-Warwick. On behalf of Mr. Schoenfeld, I'd like to address, first of all, what I think is a fundamental issue here, and that is that the secretary has applied the scienter requirement of Bullock in a circular fashion, and I refer the bench to page 24 to 26 of the secretary's briefing, where she, or he, she, he now, which I don't, sorry. It's a he. It's a he. All right, where he concludes that you can presume defalcation where a fiduciary acts disloyally, and I assume that means disloyal to the plan, so that is a per se standard, and in fact, the secretary relies on both Bayless and Binns versus Exxon, which they cite, for that interpretation. They're just trying to lead this court back from the Bullock scienter requirement to the per se standard that they've applied in the past. Why did Mr. Schoenfeld authorize the last three loans?  they would be paid by the buyer of the company, and he did it for the benefit of all of the employees of Tomco who went to work on Friday for Tomco and went to work on Monday for TAP and worked for TAP for two more years. Are there beneficiaries of the plan who were not employees at the time? There could have been. The owners of Tomco did not preserve any of the corporate records. Certainly, the majority of the participants in the plan were the continuing employees, and some participants who had retired would have been paid out. Well, wait a minute. If I'm hearing you right, you're saying the majority of the plan's participants were still employees, but not all. No, not all. Some would have been new employees that hadn't been in the plan yet, but a significant number of the continuing employees who were plan members continued. But he owed a duty to the people who were beneficiaries who weren't current employees. There is definitely a duty, but we're discussing scienter here, not duty. The secretary would like... The duty was violated. The money didn't get repaid, but it didn't get repaid because the buyers... The duty was violated whether the money got repaid or not. I think that's maybe the point that you're missing in all of this. I'm not missing the point. I'm dealing with the issue of Mr. Schoenfeld's, the person that's going to be asked to pay the plan. Okay, but you're saying... Hang on. You're saying that in Mr. Schoenfeld's mind, he thought that as long as the money got repaid, he would not be violating his duty? He thought that... That's a fair statement. Okay. And I want to make one more point. Oh, I have lots of time. No, you have... It's going up. It's going up. You're doing that. It's going up. So unless my colleagues have any questions... One more... No, unless my colleagues have any questions, your time is up. Thank you very much. Thank you both for your argument in this matter, and you can show that you can be serious, prepared, and have a sense of humor, so we appreciate all of that. Thank you. This matter will stand submitted.
judges: Callahan, Watford, Owens